**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

**TORILYNN MCCLAIN, individually and on behalf of all others similarly situated,** **CASE NO.:**

**Plaintiff,**

**vs.**

**PROGRESSIVE EXPRESS INSURANCE COMPANY,**

**Defendant.**

______________________________________/

**CLASS ACTION COMPLAINT FOR DAMAGES AND CLASS WIDE DECLARATORY RELIEF**

Plaintiff Torilynn McClain ("Policyholder"), individually and on behalf of all others similarly situated, by and through undersigned counsel, sues Defendant Progressive Express Insurance Company ("Progressive"). Policyholder's claims in this action arise from two different aspects of her total loss automobile insurance claim. Initially, she brings a first party bad faith claim under sections 624.155 and 626.9541(1)(i)3a, Florida Statutes arising from Progressive's failure to adopt and implement standards for the proper investigation of the claim she made under her Progressive insurance policy following the total loss of her insured automobile.

Policyholder's remaining claims arise from Progressive's assertion of an invalid subrogation lien against her recovery from the driver who caused the accident (the "at-fault driver") arising from the accident that rendered her insured vehicle a total loss and also caused her to sustain injuries and damages. This lien was asserted in violation of the made whole rule[1],

[1]The made whole rule entitles an insured to full reimbursement "before the subrogated insurer could participate in the recovery from a tortfeasor." *See e.g. Monte de Oca v. State Farm Fire & Cas. Co.,* 897 So. 2d 471, 473 (Fla. 3d DCA 2004), citing *Insurance Co. of North America v.*

a well-settled principle of insurance subrogation law in Florida. Here too, Progressive's assertion of the invalid lien was the result of its failure to adopt and implement standards for the proper investigation of claims that led it to its related failure to apply the made whole rule in its handling of Policyholder's claim. Relatedly, Progressive tortiously interfered in the contract that the at-fault driver's insurance company and policyholder formed for purposes of settling Policyholder's damages claims. Lastly, Policyholder asserts a related claim in this action for class-wide declaratory relief establishing that Progressive has an affirmative obligation under section 626.9541(1)(i)3.a (which is incorporated into the relevant insurance policy by operation of law), to determine whether its policyholders have been fully reimbursed before asserting a subrogation lien on any damages recovery from a third party.

## I. THE PARTIES, JURISDICTION, AND VENUE

1. This is an action for damages, including punitive damages, in an amount in excess of $75,000 exclusive of interest, costs, and attorney's fees, brought by Policyholder on her own behalf. It is also an action for class wide declaratory relief brought on behalf of Policyholder and all others similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure.

2. Policyholder is a natural person, over the age of 21, a citizen of the State of Florida, and currently a resident of Highlands County.

3. Progressive is an Ohio corporation with its principal place of business in the State of Ohio, and therefore a citizen of Ohio. Progressive engages in substantial business activity in

---

*Lexow,* 602 So.2d 528, 529–30 (Fla.1992)

the State of Florida and the territorial jurisdiction of this Court, including insuring risks located in both Broward County and Highlands County. [2]

4. This Court also has subject matter jurisdiction over Policyholder's class wide claim for declaratory judgment pursuant to 28 U.S.C. § 1332(d) (the Class Action Fairness Act), because this is a class action in which the aggregate amount in controversy, including the monetary value of the declaratory relief sought, exceeds five-million dollars ($5,000,000.00) exclusive of interest and costs. Both Policyholder, and at least some members of the putative class, are citizens of the State of Florida. Progressive is a citizen of Ohio. This Court has subject matter jurisdiction over Policyholder's individual claims pursuant to 28 U.S.C. § 1332(a)(2) because there is complete diversity of citizenship between Policyholder and Progressive and the amount in controversy, including punitive damages, exceeds $75,000. Alternatively, this Court has supplemental jurisdiction over Policyholder's individual claims pursuant to 28 U.S.C. §1367 because they arise from the same transaction and occurrence as her class action claim.

5. The acts and omissions that give rise to this lawsuit occurred in both Broward County, Florida and Highlands County, Florida and arise from an insurance contract insuring a risk that was located in Broward County at the time the events giving rise to the underlying claim took place.

## II. GENERAL ALLEGATIONS RELEVANT TO PLAINTIFF'S INDIVIDUAL CLAIM ARISING UNDER SECTION 624.155, FLORIDA STATUTES

6. At all material times, Progressive provided automobile insurance coverage pursuant to an insurance policy bearing policy number 01241894 (the "Progressive Policy"),

[2] When the events giving rise to the underlying claim occurred, Policyholder was a resident of Broward County, Florida. She has since relocated to Highlands County.

issued to Raiser-DC, LLC, Raiser-PA, LLC, and Raiser-MT, LLC. Policyholder was an additional insured under the Progressive Policy. A true and correct copy of the Progressive Policy is attached hereto.

7. The Progressive Policy insured against the risk of loss or damage to Policyholder's automobile arising from her use of that vehicle in providing transportation services to the public as a contractor or subcontractor of the named insured. Progressive is engaged in the business of insuring automobiles throughout the State of Florida, including in both Broward County and Highlands County.

8. On or about April 18, 2024, Policyholder's vehicle was destroyed as the result of a collision with another vehicle while Policyholder's vehicle was being used for purposes that were covered by the Progressive Policy referenced above.

9. Policyholder promptly reported her loss to Progressive.

10. Progressive acknowledged coverage for the loss, determined that the insured vehicle could not be repaired and was therefore a total loss, and assigned claim number 24-6883167-01 to Policyholder's claim.

11. Under the terms of the Progressive Policy, Progressive was obligated to indemnify Policyholder in an amount equal to the insured vehicle's Actual Cash Value ("ACV").

12. In order to calculate the insured vehicle's ACV, Progressive relied entirely on a computer-generated vehicle valuation report produced by a third-party vendor utilizing a computer algorithm. That report will be referred to hereafter as the "Vehicle Valuation Report."

13. The Vehicle Valuation Report and similar reports routinely generated by Progressive's third-party vendor do not accurately determine an ordinary vehicle's ACV. To the

contrary, these reports routinely underestimate the value of an insured vehicle to the disadvantage of Policyholder and other similarly situated insureds.

14. Progressive's wholesale reliance on the Vehicle Valuation Report for purposes of determining the insured vehicle's ACV was consistent with its general business practices. Progressive has effectively outsourced its obligation to evaluate a total loss vehicle's ACV to its Vehicle Valuation Report vendor both for this claim as well as substantially all other total loss automobile claims in the United States. Progressive routinely relies entirely on similar reports to determine an insured total loss vehicle's ACV in all, or nearly all, of its total loss automobile claims in Florida and throughout the United States.

15. The Vehicle Valuation Report makes deductions and adjustments to comparator vehicles described in that report, but neither the methodology nor factual basis for these adjustments are disclosed to consumers. Progressive did not, and routinely does not, provide all of the "pertinent portions of the valuation documents generated by the database" to the Policyholder, nor to other similarly situated Policyholders, as required by section 626.9743(5)(a)2.a, Florida Statutes.

16. The Vehicle Valuation Report that Progressive relied upon also reduced the value of Policyholder's insured vehicle by applying a "Projected Sold Adjustment" to several of the comparator vehicles described in that report. These adjustments are based upon an undisclosed algorithm used by the vendor who prepared the Vehicle Valuation Report. The Projected Sold Adjustments serve to arbitrarily reduce the amount of indemnity that Progressive pays to its policyholders in a non-transparent manner that artificially lowers the insured vehicle's ACV, and by extension the amount of insurance benefits paid, to the disadvantage of Progressive's policyholders.

17. Progressive was aware that ACV calculations generated by its third-party vendor routinely undervalue claims. Facts and circumstances that placed Progressive on notice that the Vehicle Valuation Report underestimated Plaintiff's vehicle's ACV include extensive litigation concerning the adequacy of such valuations, a substantial portion of which resulted in statewide class action settlements in several different states. This litigation includes, but is not limited to, challenges to the "Projected Sold Adjustment."

18. Progressive has entered into multiple class action settlements in other states besides Florida concerning its use of reports provided by the vendor of the Vehicle Valuation Report with settlement amounts totaling more than $150 million for undervaluing claims, including but not limited to undervaluing claims by using the Projected Sold Adjustment. However, Progressive has not instructed its vendor to materially change its algorithm in response to the issues that came to light in this litigation and it continued to use the Projected Sold Adjustment thereafter in Florida, including for its adjustment of Policyholder's claim.

19. The vast majority of appraisals[3] that are conducted in connection with Progressive total loss claims result in further payment to Progressive policyholders. Progressive has an affirmative obligation under section 626.9541(1)(j) to maintain "complaint handling procedures" which require it to "keep a complete record of all the complaints received since the date of the last examination." The statutory definition of the word "complaint" would encompass any policyholder assertion that a claim was underpaid or a policyholder's demand for appraisal. Accordingly, Progressive knew, or should have known, that the application of the contractual

[3] An appraisal is a contractual dispute resolution process found in some insurance policies used to set a disputed amount of loss. *See e.g. State Farm Fla. Ins. Co. v. Crispin,* 290 So. 3d 150, 151 (Fla. 5th DCA 2020)

appraisal process almost always discredits the valuation that the reports generated by the vendor who provided the Vehicle Valuation Report used in the case at bar.

20. Despite being on notice that such valuations are unreliable and consistently underestimate the insured vehicle's ACV to the disadvantage of policyholders, Progressive relied entirely on the Vehicle Valuation Report when it adjusted and underpaid Policyholder's claim.

21. Relying upon the Vehicle Valuation Report, Progressive initially determined that the ACV for Policyholder's vehicle was $29,434.40. After calculating applicable sales tax of $1,816.06 and deducting the $2,500.00 policy deductible, Progressive issued payment to Policyholder in the amount of $28,750.46.

22. After Policyholder both filed a Civil Remedy Notice of Insurer Violation and a lawsuit in Broward County small claims court, Progressive invoked the contractual appraisal process in response.

23. The outcome of the appraisal process demonstrated that Progressive had initially underpaid the claim by $2,783.14.

24. Although Progressive ultimately paid the entire contractual amount due after the execution of the appraisal award, more than 60 days passed since the Civil Remedy Notice of Insurer Violation was filed by the time Progressive paid the contractual amount due. As a result, Progressive failed to cure the violations asserted in Policyholder's Civil Remedy Notice.

25. All conditions precedent to the causes of action asserted below have been performed, excused, or waived.

## III. COUNT I. – FIRST VIOLATION OF SECTION 626.9541(1)(i)3a AS INCORPORATED BY SECTION 624.155(1)(a) FLORIDA STATUTES

**(Individual Claim)**

26. Policyholder realleges and incorporates paragraphs 1 through 25 herein by reference as if set forth in full.

27. Section 626.9541(1)(i)3a, Florida Statutes, prohibits an insurer from "[f]ailing to adopt and implement standards for the proper investigation of claims." Progressive violated this statute in two different ways.

28. First, Progressive improperly relied upon the deficient Vehicle Valuation Report in adjusting Policyholder's total loss claim. Progressive knew, or should have known, from class action settlements and appraisal outcomes, as well as the exercise of reasonable care and quality control, that the Vehicle Valuation Report it used for Policyholder's claim, and similar valuation reports generated by that vendor, consistently underestimate the ACV of insured vehicles to the detriment of the policyholder whose vehicle was rendered a total loss. Progressive's reliance on the Vehicle Valuation Report directly resulted in an underpayment of the claim to Policyholder. The use of the Vehicle Valuation Report under these circumstances constitutes a failure to adopt and implement standards for the proper investigation of claims.

29. Second, Progressive's use of the "Projected Sold Adjustment" served to artificially reduce the ACV for Policyholder's vehicle when Progressive knew, or should have known, both through litigation as well as the exercise of ordinary diligence and quality control that the Projected Sold Adjustments were not methodologically sound and resulted in improper reductions in the Actual Cash Value calculations on which Progressive's total loss claim payments were based.

30. Progressive's failure to adopt and implement standards for the proper investigation of Policyholder's claim described above in paragraphs 28 and 29 directly resulted

in its related failure to timely and correctly adjust, evaluate, and pay her claim, causing damage to Policyholder.

31. Progressive's reliance on the Vehicle Valuation Report used in this case constitutes a general business practice because Progressive systematically uses similar reports with similar deficiencies in its handling of nearly all total loss automobile claims in Florida and the rest of the United States.

32. Under Florida law, Progressive had a duty to evaluate Policyholder's claim in good faith and "based upon proof of loss required by the policy and its expertise in advance of a determination by a court or arbitration." *See e.g. Vest v. Travelers Ins. Co.,* 753 So. 2d 1270, 1275–76 (Fla. 2000). Cases recognize that "appraisal clauses are often treated similarly to arbitration clauses." *Progressive Am. Ins. Co. v. Glassmetics, LLC,* 343 So. 3d 613, 622 (Fla. 2d DCA 2022) citing *Webb Roofing & Constr., LLC v. FedNat Ins.*, 320 So. 3d 803, 806 (Fla. 2d DCA 2021). Thus, Progressive breached its duty to provide a good faith evaluation of Policyholder's total loss claim, using its own expertise, thereby forcing Policyholder to resort to litigation and ultimately to appraisal and incur the related expenses.

33. If Progressive had complied with its statutory obligation to adopt and implement standards for the proper investigation of claims, and if it had complied with its obligation discussed in *Vest* to evaluate Policyholder's claim in good faith based on proof of loss required by the policy and its own expertise in advance of appraisal, it would not have been necessary for Policyholder to incur attorneys' fees, litigation costs, and fees associated with the appraisal. The attendant delay could also have been avoided.

34. As a result of Progressive's violation of its statutory obligations, Policyholder incurred expenses in pursuing the additional indemnity to which she was entitled, including

attorneys' fees, litigation costs, and fees paid to her appraiser in connection with obtaining an accurate valuation of the insured vehicle's ACV and full payment of her total loss insurance claim.

35. Instead of complying with its good faith claim handling obligations recognized in *Vest*, Progressive chose to improperly delegate that obligation to an algorithm provided by a third party under circumstances when it knew, or should have known, that the resulting valuations were insufficient.

36. Policyholder had a right to expect that, in consideration of her payment of the related premium, she would receive a good faith and competent evaluation and investigation of her claim in the event she sustained a covered loss. Progressive knowingly or recklessly chose to disregard Policyholder's rights under the insurance policy and related Florida law by delegating the adjustment of her claim to a third-party algorithm when it knew, or should have known, that reliance upon that algorithm would result in an underpayment of Policyholder's claim. It did so through a general business practice that routinely reduces its claim related payment to Policyholder and other similarly situated policyholders and also reduces its claim handling expenses. By doing that, Progressive intentionally violated, or willfully disregarded, Policyholder's rights under the insurance policy to a good faith and competent evaluation of her claim.

37. Policyholder is entitled to an award of punitive damages pursuant to section 624.155(8). For the reasons stated above, Progressive's reliance upon the defective Vehicle Valuation Report, when Progressive knew or should have known that such software was defective, was willful, wanton, and malicious, or in reckless disregard of Policyholder's rights.

Progressive's use of and reliance upon the Vehicle Valuation Report occurs with such frequency as to constitute a general business practice.

38. Because Progressive has a financial incentive to undervalue claims for which it is contractually liable, and because it does so as part of its general business practices relating to the adjustment of total loss claims, an award of substantial punitive damages is necessary in order to meaningfully deter Progressive from repeating the practices that give rise to Policyholder's claim here.

39. Policyholder is also entitled to interest on the indemnity funds that Progressive failed to timely pay as a result of the appraisal and litigation, as well as pre-judgment and post-judgment interest on her damages in this action.

40. Policyholder is further entitled to recover prevailing party attorney's fees and litigation costs associated with this action pursuant to section 624.155(4), Florida Statutes.

WHEREFORE, Plaintiff Torilynn McClain respectfully requests that this Honorable Court enter judgment in her favor against Defendant Progressive Express Insurance Company in the total amount of her actual damages, as well as punitive damages, in an amount to be determined at trial, together with prejudgment interest and reasonable attorney's fees, and costs incurred in this action.

## IV. GENERAL ALLEGATIONS RELATING TO THE POLICYHOLDER'S CLAIMS ARISING FROM PROGRESSIVE'S ASSERTION OF AN INVALID LIEN ON HER PERSONAL INJURY RECOVERY

41. Policyholder realleges and incorporates paragraphs 1 through 25 herein by reference as if set forth in full.

42. In addition to the total loss of the vehicle covered by the Progressive insurance policy described above, the accident giving rise to Policyholder's total loss claim also caused Policyholder to sustain physical injury, medical expenses, and lost earnings.

43. The at-fault driver was insured under an insurance policy issued by GEICO Casualty Company ("GEICO") with liability limits of ten-thousand dollars ($10,000.00).

44. GEICO entered into a settlement agreement with Policyholder on behalf of the at-fault driver whereby it agreed to pay the at-fault driver's liability limits of $10,000.00 to Policyholder in exchange for the release of any claim for further damages against the at-fault driver.

45. The terms of the settlement that GEICO negotiated with Policyholder required the full payment of $10,000.00 and did not authorize any deductions for any liens.

46. Although the $10,000.00 was not sufficient to fully compensate Policyholder for her loss, she accepted the settlement because she believed it was unlikely that she would be able to recover more even if she obtained a judgment against the at-fault driver because he lacked sufficient assets to satisfy any judgment.

47. Before GEICO issued any payment to Policyholder, Progressive contacted GEICO and asserted a "MedPay Lien" in the amount of $2,484.42 against Policyholder's recovery.

48. On June 29, 2025, Policyholder filed a second Civil Remedy Notice to alert Progressive to the improper imposition of the subrogation lien in violation of the made whole rule. Policyholder had hoped that this would result in a release of that lien without her incurring further attorneys' fees and costs.

49. Progressive responded to Policyholder's second Civil Remedy Notice on October 14, 2025. However, Progressive's response was not substantively responsive and did not result in the release of the lien. Progressive's non-responsive response was not consistent with a good faith error that might theoretically have led to an initial mistaken imposition of the lien. To the contrary, it reflected an intentional and deliberate refusal, or a grossly negligent failure, to appropriately address and correct the issues raised in the second Civil Remedy Notice.

50. Ultimately, on or about March 4, 2026, as a result of communication between Policyholder's counsel and the attorneys representing Progressive in the litigation in Broward County small claims Court, a representative of Progressive communicated to GEICO that it was no longer asserting any lien on Policyholder's personal injury recovery. GEICO remitted the amount of the claimed lien to Policyholder shortly thereafter.

## **V. COUNT II. - SECOND VIOLATION OF SECTION 626.9541(1)(i)3a AS INCORPORATED BY SECTION 624.155(1)(a) FLORIDA STATUTES**

51. Policyholder realleges and incorporates paragraphs 1 through 25 and 41 through 50 herein by reference as if set forth in full.

52. Florida recognizes the made whole rule, which provides that the insured is entitled to full reimbursement "before the subrogated insurer could participate in the recovery from a tortfeasor." *See e.g. Monte de Oca v. State Farm Fire & Cas. Co.,* 897 So. 2d 471, 473 (Fla. 3d DCA 2004) citing *Insurance Co. of North America v. Lexow,* 602 So.2d 528, 529–30 (Fla.1992).

53. Progressive failed to adopt and implement appropriate standards for the investigation of Policyholder's claim consistent with its obligations under the made whole rule. As a result, its claim handlers failed to sufficiently investigate the facts to determine that

Policyholder had not received full reimbursement and therefore the made whole rule prevented it from asserting any lien on Policyholder's personal damage recovery. Furthermore, Progressive continued to ignore the application of the made whole rule even after Policyholder, through counsel, brought the issue to Progressive's attention through the second Civil Remedy Notice.

54. Progressive was obligated by section 626.9541(1)(i)3a, Florida Statutes, to adopt and implement standards for the proper investigation of claims. Its failure to recognize and apply the made whole rule was a direct consequence of its failure to investigate whether Policyholder had been fully reimbursed before asserting its subrogation lien on her recovery from the at-fault driver.

55. Progressive's failure to investigate Policyholder's claim consistent with its obligations under the made whole rule was not an isolated incident. It was a consequence of a systemic failure by Progressive to adopt procedures and train its claim handlers appropriately in order to comply with its legal obligations under the made whole rule. The systemic nature of Progressive's failure to adopt and implement standards for the appropriate investigation of claims is further demonstrated by its non-responsive response to Policyholder's second Civil Remedy Notice.

56. As a result of Progressive's failure to adopt and implement standards for the proper investigation of claims relating to the invalid lien it imposed upon Policyholder's personal injury settlement, Policyholder was damaged. These damages include attorneys' fees she incurred in connection with her efforts (which were ultimately successful) in securing the release of the invalid lien and payment of the related funds by GEICO, as well as interest that accrued during the resulting delay. Notably, the amount of directly related attorneys' fees that Policyholder incurred was more than the amount of the lien itself.

57. Policyholder is entitled to an award of punitive damages pursuant to section 624.155(8). Progressive's failure to adopt and implement standards for the proper investigation of claims relating to the made whole rule was willful, wanton, and malicious and in reckless disregard of Policyholder's rights under both the Progressive policy and Florida law.

58. Because Progressive has a financial incentive to avoid complying with the made whole rule, and because it does so across a large number of claims and as part of its general business practice, an award of substantial punitive damages is necessary in order to meaningfully deter Progressive from repeating the practices that give rise to Policyholder's claim here.

59. Policyholder is further entitled to recover prevailing party attorney's fees and litigation costs associated with this action pursuant to section 624.155(4), Florida Statutes.

WHEREFORE, Plaintiff Torilynn McClain respectfully requests that this Honorable Court enter judgment in her favor against Defendant Progressive Express Insurance Company in the total amount of her actual damages, as well as punitive damages, in an amount to be determined at trial, together with prejudgment interest and reasonable attorney's fees, and costs incurred in this action.

## VI. COUNT III. - TORTIOUS INTERFERENCE WITH CONTRACT

60. Policyholder realleges and incorporates paragraphs 1 through 25 and 41 through 50 herein by reference as if set forth in full.

61. At the time that it asserted its invalid lien on Policyholder's damages settlement, Progressive had knowledge of Policyholder's contract with GEICO referenced in Paragraph 44 above. That contract provided that Policyholder and GEICO entered into a settlement whereby she would receive a $10,000 payment in exchange for releasing her claims against the at-fault

driver. Progressive also had knowledge of that contract after it received Policyholder's second Civil Remedy Notice, but continued to assert its invalid lien thereafter.

62. Progressive intentionally and unjustifiably interfered with that contract by asserting a lien on Policyholder's recovery from the at-fault driver, under circumstances where the made whole rule prevented Progressive from asserting any subrogation rights against Policyholder's damages recovery because she had not been fully reimbursed. Progressive's interference caused GEICO to breach its contract with Policyholder by withholding payment of the amount of Progressive's claimed lien, even though the contract required GEICO to pay the full $10,000 limits.

63. As a result of Progressive's interference with her contract with GEICO, Policyholder suffered damages including incurring attorneys' fees and costs in connection with her ultimately successful efforts to secure the release of the invalid lien. The amount of the related attorneys' fees exceeded the amount of the invalid subrogation lien.

64. Progressive's tortious interference in Policyholder's contract with GEICO and related violation of the made whole rule was willful, wanton, and malicious and in reckless disregard of Policyholder's rights under the made whole rule, which flow from her rights as a Progressive policyholder who sustained a covered loss.

65. Because Progressive has a financial incentive to avoid complying with the made whole rule, and because it does so across a large number of claims and as part of its general business practice, an award of substantial punitive damages is necessary in order to meaningfully deter Progressive from repeating the practices that give rise to Policyholder's claim here.

66. Policyholder's damages also include interest on the funds that GEICO initially refused to remit to Policyholder due to Progressive's improper assertion of its invalid subrogation lien.

WHEREFORE, Plaintiff Torilynn McClain respectfully requests that this Honorable Court enter judgment in her favor against Defendant Progressive Express Insurance Company in the total amount of her actual damages, as well as punitive damages, in an amount to be determined at trial, together with prejudgment interest.

## VII. COUNT IV. - DECLARATORY RELIEF

**(Class Action Claim)**

67. Policyholder realleges and incorporates paragraphs 1 through 25 and 41 through 50 herein by reference as if set forth in full.

68. This is an action for declaratory judgment brought pursuant to 28 U.S.C. § 2201 or, alternatively, Chapter 86, Florida Statutes.

**CLASS ACTION ALLEGATIONS**

69. Policyholder brings the claim for relief pled in this count on behalf of herself and on behalf of the following class (the "Class"):

> All Progressive policyholders who asserted first-party claims for property damage under Progressive automobile insurance policies in the State of Florida and who also settled claims for damages against third-party tortfeasors in connection with the same incident that gave rise to the first-party claim during the five years prior to filing of this Complaint, where Progressive asserted a subrogation lien on the Progressive policyholder's third-party recovery.

70. Policyholder's declaratory judgment claim is typical of the claims of the members of the Class. Progressive's failure to adopt and implement standards for the proper investigation of claims that require a specific inquiry to determine whether the Progressive policyholder had

been fully reimbursed prior to asserting a subrogation lien in compliance with the made whole rule applies uniformly to all members of the Class.

71. Policyholder will fairly and adequately represent the interests of the Class. Policyholder, and all members of the Class, have identical interests in ensuring that their Progressive claims are adequately investigated, that the made whole rule is applied, and that they are not subjected to subrogation liens in situations where the made whole rule does not permit Progressive to assert one.

72. Policyholder has retained undersigned counsel, who is experienced in consumer protection and insurance bad faith litigation.

73. Progressive has acted on grounds generally applicable to the plaintiff Class, such that the final declaratory relief is appropriate with respect to the Class as a whole. In particular, Policyholder seeks declaratory relief establishing that Progressive's obligation to adopt and implement standards for the proper investigation of claims imposed by section 626.9541(1)(i)3a, Florida Statutes and incorporated by Florida law into all relevant Progressive insurance policies, requires Progressive to investigate whether its policyholder has been fully reimbursed before asserting a subrogation lien on its policyholder's damage recovery.

74. The question of whether Progressive's statutory and contractual obligation to adopt standards for the proper investigation of claims requires Progressive to determine whether its policyholder has been fully reimbursed before asserting a subrogation lien presents a common question of law and fact that predominates over any relevant question that may affect only individual members of the class.

75. Policyholder knows of no difficulty concerning the management of this action that would preclude maintenance as a class action.

**GROUNDS FOR DECLARATORY RELIEF**

76. As noted above, section 626.9541(1)(i)3a, Florida Statutes, prohibits an insurer from "[f]ailing to adopt and implement standards for the proper investigation of claims."

77. In addition, "Florida courts have long recognized that the statutory limitations and requirements surrounding traditional insurance contracts may be incorporated into an insurance contract for purposes of determining the parties' contractual rights." *See e.g. Found. Health v. Westside EKG Assocs.,* 944 So. 2d 188, 195 (Fla. 2006); *See Citizens Ins. Co. v. Barnes,* 98 Fla. 933, 124 So. 722, 723 (1929).

78. In light of the made whole rule, Progressive's statutory and contractual obligation to adopt and implement standards for the proper investigation of claims requires Progressive to make reasonable efforts to determine whether a Progressive policyholder has been fully reimbursed before asserting a subrogation lien on any policyholder's damage recovery from a third party.

79. Progressive's complete failure to investigate that issue in connection with Policyholder's claims, even after that omission was brought to its attention through the second Civil Remedy Notice, demonstrates that this was not an isolated incident. To the contrary, it is evidence of a systemic failure on Progressive's part to conduct sufficient investigations as are necessary to comply with the made whole rule and its statutory and contractual obligations toward its policyholders.

80. In consideration of the premiums paid for the Progressive insurance policies, Policyholder and the members of the Class are entitled to a sufficient and lawful investigation of their claims and to be free from the imposition of a subrogation lien imposed by Progressive where they have not been fully reimbursed.

WHEREFORE, Plaintiff Torilynn McClain respectfully requests that this Honorable Court enter a declaratory judgment in her favor against Defendant Progressive Express Insurance Company establishing that Progressive is affirmatively obligated to investigate whether its policyholders have been fully reimbursed before asserting a subrogation lien on any damages recovery paid by a third party, and that it may not assert such a lien under circumstances where the Progressive policyholder has not been made whole.

**DEMAND FOR TRIAL BY JURY**

Policyholder demands trial by jury on all claims so triable.

Respectfully Submitted,

**THE LAW OFFICES OF JEFFREY N. GOLANT, P.A.**

Counsel for the Plaintiff Torilynn McClain
2835 NW Executive Center Dr. Ste. 100
Boca Raton, Florida 33431-8510
Telephone: (954) 942-5270
Facsimile: (954) 942-5272
Email: Jgolant@jeffreygolantlaw.com
By: **/S/ Jeffrey Golant Esq.**
Florida Bar No. 0707732